**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MILA KRUPNICK** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:12-CV-273** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **ARCADIS OF U.S., INC.,** | : | **Magistrate Judge Abel** |
| | : | |
| **Defendant.** | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on the Motion for Summary Judgment by Defendant

ARCADIS of U.S., Inc. ("Motion for Summary Judgment").  (Doc. 26).  For the reasons set forth

below, the Motion for Summary Judgment is **GRANTED**.

**II. BACKGROUND**

*A.  Factual Background*

Plaintiff, Mila Krupnick, ("Plaintiff" or "Krupnick") began working for Malcolm Pirnie,

a company that developed and engineered water and waste water treatment plants, around

October 1997.  Krupnick was hired as a level five engineer,[1] and was later promoted to level six

engineer, where she remained until 2009.  In late 2009, ARCADIS of United States, Incorporated

("Defendant" or "ARCADIS") acquired Malcolm Pirnie, which became the Water Division of

ARCADIS.  Following the acquisition, Defendant reclassified the engineer levels, and Plaintiff

---

[1] Malcolm Pirnie categorized its engineers into different levels, ranging from level one to level six.  Within the
engineers, level one engineers were paid the least, while level six were paid the most.

became a level nine engineer.  Krupnick worked as a level nine engineer from 2010 until her termination in September 2011.

Level nine engineers are considered to be senior engineers.  Their responsibilities include designing electrical circuits, signing and sealing drawings, classifying electrical environments, performing short circuit coordination studies, and performing specification edits.  Senior engineers have the added responsibilities of preparing job proposals, working as lead electricians and monitoring the electrical group's budget, and interacting with clients.

Krupnick worked in Defendant's Electrical Section of the Building Design Group ("group"), located in Columbus, Ohio.  She was part of an electrical group comprised of five engineers, of whom she was the oldest by approximately fifteen years.  Plaintiff's group included James Steed and Roger Harris, both level nine engineers; Arvin Kasyouhanan, a level seven engineer; and Brendan Bartelt, a level one engineer.[2]  The group reported to Glenn Myres, its immediate supervisor.  Myres reported to Frank Barchok, Resource Manager, who was responsible for managing a staff of engineers and technicians.  In turn, Barchok reported to Richard Herriott, Senior Vice President of the Central Region Design Group.

During the final two years of Plaintiff's employment, Myres and Krupnick had a few conversations about retirement.  Some of their conversations were casual.  Myres intended to retire in March 2011, and since Krupnick was around his age, it was occasionally brought up in casual discussions.  On certain occasions, however, Myres approached Krupnick, and inquired about when she intended to retire.  In one instance, Krupnick responded that she intended to work for two more years.  During a separate discussion, after asking Krupnick about her

---

[2] At the time of Plaintiff's termination, Bartelt was a level three engineer.

intended retirement timeline, Myres stated that his wife would jump at the chance to be able to retire.

In July 2011, Myres again asked Krupnick when she was going to retire.  Myres initiated this specific conversation because he was aware that Krupnick had been selected for termination. In discussing her retirement date, Myres hoped that Krupnick would have changed her mind, and chosen to retire within three to six months, rather than maintaining her original intended timeframe of working for two more years before retiring.  If Plaintiff had stated that she planned to work for only a few additional months, Myres, who was largely involved in the decision to lay off Plaintiff, claims that he would have attempted to use that as leverage to reverse the termination decision.

The decision to terminate Krupnick was made by Barchok, Myres, and Herriott, though Myres was chiefly responsible for the final decision.  In narrowing down who would be selected for termination, Myres determined that it would necessarily come down to one of the three level nine engineers in Krupnick's group.  Barchok, Myres, and Herriott ultimately determined that Krupnick would be the level nine engineer to be terminated.  Krupnick was laid off on September 1, 2011.

### B.  Procedural Background

Krupnick filed her Complaint on March 29, 2012.  (Doc. 2).  On May 24, 2012, she filed her Amended Complaint, alleging age discrimination pursuant to Ohio Revised Code section 4112.02 and 29 U.S.C. § 621, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA").  (Doc. 14).  Defendant filed its Motion for Summary Judgment on May 9, 2013. (Doc. 26).  On March 6, 2014, this Court held oral argument on Defendant's Motion for

Summary Judgment, and counsel for all parties participated.  This matter is, therefore, ripe for review.

## III. STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed.  R. Civ.  P.  56(c).  A fact is material if proof of that fact would establish one of the elements of a claim and would affect the application of governing law to the rights of the parties.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis, Wyo.*, 542 P.2d 867, 872 (1975)).

A movant for summary judgment meets its initial burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Dixon v. Anderson*, 928 F.2d 212, 216 n. 5 (6th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)).  At that point, the non-movant must set forth specific facts showing that there is a genuine issue for trial.  *Id.* (quoting Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  It is not, however, the role of the trial court to "resolve factual disputes by weighing conflicting evidence because it is the jury's role to assess the probative value of the evidence."  *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 230 (6th Cir. 1990) (citing *Stone v. William Beaumont Hosp.,* 782 F.2d 609, 615 n. 5 (6th Cir. 1986); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980)).  All evidence and reasonable inferences must be viewed in the light most favorable to the party opposing the motion.  *Pucci*, 628 F.3d at 759 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## IV. LAW AND ANALYSIS

Plaintiff alleges that she was discriminated against based on her age, pursuant to the ADEA and O.R.C. § 4112.02. Under the ADEA and O.R.C. § 4112.02, employers are prohibited from discharging an individual based on her age. *See Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 785 (6th Cir. 2007). Age discrimination claims arising under O.R.C. § 4112.02 are analyzed under the same standard as claims arising under the ADEA. *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 282-83 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 2359, 185 L. Ed. 2d 1068 (U.S. 2013); *see e.g., Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009); *Bohichik v. Time Warner Cable, Inc.*, 04-CV-1148, 2006 WL 3506427, at *2 (S.D. Ohio Dec. 4, 2006). Accordingly, Plaintiff's state claims shall be analyzed under the same framework as her federal claims. *McKinley v. Skyline Chili, Inc.*, 543 F. App'x 461, 464 (6th Cir. 2013).

In age discrimination cases, the plaintiff bears the burden of persuasion to "show that 'age was the 'but-for' cause of the employer's adverse action.'" *Blizzard*, 698 F.3d at 283 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). A plaintiff can demonstrate an ADEA violation by either direct or circumstantial evidence. *Id.* (citing *Geiger v. Tower Auto.*, 579 F.3d 614, 610 (6th Cir. 2009). In cases where plaintiff, however, does not present direct evidence of discrimination, her claims are evaluated under the *McDonnell Douglas* burden-shifting framework. *See Norbuta v. Loctite Corp.*, 1 F. App'x 305, 311 (6th Cir. 2001); *Campbell*, 509 F.3d at 785. In the case *sub judice*, Plaintiff proffers direct evidence to support her claims, as well as circumstantial evidence. The Court presents each analysis separately herein.

### A. Direct Evidence of Discrimination

A plaintiff may present direct evidence of age discrimination. Direct evidence is "evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* at 312; *see also Conley v. U.S. Bank Nat. Ass'n*, 211 F. App'x 402, 405 (6th Cir. 2006) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). If that evidence is credible, "discriminatory animus may be at least part of an employer's motive, and in the absence of an alternative, non-discriminatory explanation for that evidence, there exists a genuine issue of material fact suitable for submission to the jury without further analysis by the court." *Id.* (citing *Blalock v. Metals Trades, Inc.,* 775 F.2d 703, 707-712 (6th Cir.1985)). Comments or remarks that "require a factfinder to draw further inferences to support a finding of discriminatory animus" do not constitute direct evidence. *Daughtery v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir. 2008) (internal citations omitted).

In determining whether an employer's action was motivated by an age bias, the Court considers four factors:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

*Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 455 (6th Cir. 2007) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477-78 (6th Cir. 2002) (internal citation omitted)). While "none of these factors is individually dispositive of age discrimination," the Court must consider them in the aggregate, "taking all of the circumstances into account." *Peters*, 285 F.3d at 478. In order "to prevail on direct evidence at the summary judgment stage, it seems that plaintiffs must prove 'by

a preponderance of the evidence…that age was the "but-for" cause of the challenged employer decision.'"  *Sharp v. Aker Plant Services Group, Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (quoting *Bartlett v. Gates*, 421 F. App'x 485, 489 (6th Cir. 2010)).  If Plaintiff can do so, "'the burden [of production and persuasion] shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.'"  *Skelton*, 249 F. App'x at 454 (quoting *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005)).

 Defendant argues that Plaintiff fails to offer any direct evidence of age discrimination. Though Plaintiff alleges that Myres' discussions to Krupnick concerning retirement are direct evidence of discrimination, Defendant disagrees.  Defendant states that retirement was a commonly discussed topic among older workers, and those brief communications do not demonstrate any discriminatory intent.  Additionally, Defendant claims that Myres' remarks about his personal plans to retire were meant only to communicate his excitement about the prospect of retiring.  Defendant argues that, because Plaintiff interpreted Myres' remarks to be joking, it further demonstrates a lack of discriminatory animus.

Defendant next addresses Myres' refusal to let Plaintiff attend solar training.  When Myres denied Plaintiff's request to attend the training session, he commented that Kasyouhanan or Bartelt would attend rather than Myres, because they were the future of the company.  This remark, according to Defendant, was not discriminatory, but was instead based on Kasyouhanan and Bartelt's technical proficiency and ability to grasp the concepts of solar engineering more rapidly than Plaintiff.  Though no one ultimately attended the solar training, Defendant notes that Myres' choice to select Kasyouhanan or Bartelt was based on efficiency and cost-effectiveness, since they were both junior level engineers.

Plaintiff claims that Defendant's argument, that Myres' comments were isolated and harmless, is not persuasive.  Plaintiff contends that, because Myres had managerial authority, and was purportedly the most influential person in the termination decision, his remarks hold a great deal of weight.  In addition, Plaintiff states that Myres' comments about the younger engineers being the future of the company, taken with his questions about Plaintiff's retirement, suggest that Plaintiff's age played a role in her termination. According to Plaintiff, most telling of all is Myres' admission that he believed Krupnick was being honest in her perception of the comments, which Krupnick stated made her feel pressured.

Applying the comments to the four direct evidence factors set out by the Sixth Circuit, this Court finds that they may rise to the level of direct discrimination.  Plaintiff meets the first factor, because the comments were made by Myres, who was a decision-maker.  Plaintiff also meets the fourth factor, as the comments were made within proximate time of Krupnick's termination, and the final conversation about Krupnick's retirement timeline was in July 2011, less than two months before her termination date.  Plaintiff, however, has failed to demonstrate that the evidence presented meets the two outstanding factors.

Plaintiff does not meet the second factor—statements were related to the decision making process—because she has not shown sufficient evidence to suggest that the retirement questions and the comments concerning the solar training were related to Krupnick's termination.  Though questions about retirement could be considered suspect, Plaintiff has failed to offer any additional support to indicate that the short conversations between Krupnick and Myres, in which they discussed retirement, were related to the decision to terminate Plaintiff.  *See Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012) ("questions concerning retirement plans alone do not constitute direct evidence of age discrimination") (internal citation omitted);

*see also Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) (to conclude that the remark "Why don't you just retire and make everyone happy?" was direct evidence of age discrimination would require an inference to be drawn, because "[the words] 'retire' and 'age' are not synonyms,") (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)).

As to the third factor—whether the statements were more than merely vague, ambiguous, or isolated remarks—Plaintiff has not sufficiently demonstrated that Myres' remarks about retirement were not ambiguous, isolated, or vague. While Myres broached the topic of retirement on a few occasions with Krupnick, Plaintiff has not shown that those discussions were anything more substantial than casual conversation. The Court considered allegedly stray remarks in *Sharp*, in which Sharp and his supervisor, Hudson, had a few conversations concerning Sharp's termination, and how age had factored into that decision. 726 F.3d 789. During two conversations with Sharp, Hudson specifically stated that age had played a role in the decision, referencing the benefits of bringing on younger employees, as well as making note of Sharp's age. *Id.* at 794-96. The Court found that Hudson's remarks were not merely stray remarks, but rather "explain[ed] the very decision at the heart of [the] lawsuit," because they "specifically described… [the] rationale in choosing which employees to fire and which to retain." *Id*. at 798. Here, Plaintiff has neglected to articulate how Myres comments rise beyond the level of stray remarks or general comments, thereby failing to meet the third factor of the direct evidence standard. *Id.*; *see also Daugherty*, 544 F.3d at 708 ("general, vague, or ambiguous comments do not constitute direct evidence of discrimination").

Moreover, the July 2011 conversation in which Myres and Krupnick engaged in a brief conversation about Krupnick's retirement, suggested that, rather than using retirement as a catalyst for termination, Myres hoped to use Krupnick's retirement plans as a way to prevent her

impending termination.  (*Myres Dep.* at 75-77, Doc. 29-9).  In *Lefevers v. GAF Fiberglass Corporation*, the Court noted that a regional manager's statement, "I don't understand why you older employees—old employees think we're trying to get rid of you. We need you to run this plant," showed a "desire to retain, not to terminate" older employees.  667 F.3d at 724.  Here, Myres' July 2011 conversation with Krupnick is analogous.  Myres posed the questions about retirement to Krupnick after the termination decision had been made, and, according to his testimony, did so in an effort to save her position, not as a means of ensuring her termination.

The Court drew a more distinct line between what is and is not considered direct evidence in *Hale v. ABF Freight System, Inc.*, 503 F. App'x 323, 330-32 (6th Cir. 2012).  The *Hale* Court examined direct evidence offered by the plaintiff in support of his age discrimination claim.  Plaintiff cited four instances of alleged direct evidence of age discrimination: two general inquiries from Plaintiff's immediate supervisor, regarding Plaintiff's plans to retire; a sudden escalation in criticism of Plaintiff's work, which coincided with the retirement inquiries; and a statement in which Plaintiff's immediate supervisor stated, "[h]e is going to leave here when he is 62. I am going to see to it.  He has been here long enough, and he is going to go on his social security."  *Id.* at 330.  The Court found that neither the questions about Plaintiff's retirement nor the increased scrutiny with which the inquiries correlated were direct evidence, because neither piece of evidence "'prove[d] the existence of a fact without requiring any inferences.'"  *Id.* at 331 (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)).

The *Hale* Court, however, found the statement referencing Plaintiff's age required the conclusion "that being 62 was a precipitating factor of Hale's termination."  *Id.* at 332.  In so finding, the Court distinguished *Hale* from *Scott*, noting that "[w]hile the *Scott* Court reasoned that the statement 'retire' and 'age' are not synonyms, '62' is synonymous with 'age.'"  *Id.*

10

(citing *Scott*, 182 F. App'x at 526).  Perhaps more notably, the Court found that Hale's supervisor's statement showed that her decision was based on age itself, rather than an "age-correlated factor," like retirement, as was the case in *Scott*.  *Id.*

The *Scott* and *Lefevers* Courts clearly stated that conversations regarding retirement are not inherently discussions about age.  *Scott*, 182 F. App'x at 526; *Lefevers*, 667 F.3d at 724.  In *Scott*, the Court found that a mere statement regarding retirement did not equate to a statement about age.  *Id*.  Here, Myres' brief retirement conversations with Krupnick are analogous to the comment analyzed in *Scott*.  As noted by the *Scott* Court, age and retirement are not synonymous.  *Id.*  There is no basis to conclude that a reference to retirement is *ispo facto* evidence of age discrimination.

The Court's reasoning in *Lefevers*, that questions about retirement plans alone do not amount to direct evidence of age discrimination, supports the finding of no direct evidence of age discrimination in this case.  *Lefevers*, 667 F.3d at 724.  In *Lefevers*, the Court found that a discussion about retirement can be initiated for other than a discriminatory purpose, and not rise to the level of age discrimination.  There, the issue of retirement was raised in an effort to retain the employee.  *Id*. (finding that the regional manager's statement, "I don't understand why you older employees—old employees think we're trying to get rid of you. We need you to run this plant," showed a "desire to retain, not to terminate" older employees).  Here, Myres' third, and final, conversation with Krupnick concerning her retirement was held after the decision to select her for termination had been made.  The evidence presented by Krupnick does not show that the conversation was initiated with discriminatory animus.   Rather, similar to *Lefevers*, the impetus behind the discussion was Myres' goal of circumventing Krupnick's termination based on her retirement plans.  Myres raised the questions about Plaintiff's retirement in a last ditch effort to

save her from termination.  He stated: "if she had changed her mind and said, 'well, I decided I'm going to retire in three months or four months or six months, I would have done anything I could with management and with the people above me to try to find some way to hold onto her so that she didn't have to be let go."  (*Myres Dep.* at 76-77, Doc. 29-9).

Without more sufficient evidence that demonstrates a discriminatory animus as motivation for the remarks, *Scott* and *Lefevers* counsel this Court to find that the comments at issue do not rise to the level of direct discrimination.

The case *sub judice* can be distinguished from *Hale*.  The *Hale* Court found that the specific discussion of Hale's age, discussed in conjunction with a desire that he leave the company at age 62, required the conclusion that age was the primary factor in Hale's termination.  *Hale*, 503 F. App'x at 332.  Moreover, the *Hale* Court did not have to draw any inferences in finding that the statement at issue was evidence of age discrimination.  *Id*.  Here, Myres' discussions with Krupnick concerned retirement, but never involved discussion of Krupnick's age.  Unlike in *Hale*, finding that Myres' conversations with Krupnick demonstrated that age was a primary factor in the termination decision would require this Court to draw an inference that general discussions of retirement merely blanketed age-based discrimination.  Drawing such an inference would be to ignore the clear language of the Sixth Circuit in comparable ADEA cases.

Neither the few remarks about retirement, nor the isolated remark about Plaintiff's coworkers, can be considered direct evidence of age discrimination without this Court so inferring.  Plaintiff is, therefore, unable to demonstrate direct evidence of age discrimination.

Notwithstanding this Court's finding that Plaintiff has failed to present direct evidence of age discrimination, an analysis of her *prima facie* case follows herein.

### B.  Prima Facie Case

The framework applied to analyzing age discrimination claims under Ohio law and the ADEA is the familiar *McDonnell Douglas* burden-shifting framework.  *See Blizzard*, 698 F.3d at 283 (applying *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)).  The *McDonnell Douglas* framework is used in cases where the plaintiff presents circumstantial evidence of discrimination.  *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008).  Under *McDonnell Douglas*, Plaintiff must make out a *prima facie* case of age discrimination.  *Conley*, 211 F. App'x at 405.  If Plaintiff is able to establish her *prima facie* case, "the burden of production shifts to Defendant to 'articulate some legitimate, nondiscriminatory reason for [its action].'"  *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491-92 (6th Cir. 2010) (quoting *McDonnell Douglas*, 411 U.S. at 802).  If Defendant meets its burden of production, the burden then shifts back to Plaintiff, who must "demonstrate that Defendant's 'proffered reason was not the true reason for the employment decision.'"  *Id.* (quoting *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 320 (6th Cir. 2007)).

To establish a *prima facie* case of age-based discrimination, Plaintiff must show, by a preponderance of the evidence, that: "(1) he or she was part of a protected class (i.e., age forty or over); (2) he or she was qualified to perform the job; (3) he or she was discharged; and (4) the employer replaced him or her with a younger individual."  *Conley*, 211 F. App'x at 405 (citing *Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1126 (6th Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802)).  If, however, the discrimination allegations arise from a workforce

reduction, the fourth requirement is altered "so that the plaintiff must also demonstrate some 'direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'"  *Campbell*, 509 F.3d at 785 (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (internal citations omitted)).

In the case *sub judice*, Defendants do not argue, and therefore concede, the first and third elements, of the *prima facie* case.  This Court, then, must address the second and fourth requirements, as well as discuss the possibility that Plaintiff's termination was the result of a workforce reduction.

1.  Qualification for the Position

Defendant argues that Plaintiff fails on the qualification prong of the *prima facie* case because she was not meeting Defendant's legitimate expectations for a level nine engineer. Defendant states that specific limitations prescribed to Plaintiff by Myres are clear demonstrations that Krupnick did not meet the objective standard for a level nine engineer. Defendant points to Plaintiff's limited client interactions, alleging that Myres had to limit Krupnick's internal client interactions in their entirety, based on complaints from project managers.  Defendant notes that Plaintiff's performance reviews in 2009 and 2010 were lower than Harris and Steed, the other level nine engineers in her group.  In addition, Defendant states that Plaintiff had a difficult time managing the budget on her projects, and often lost profit on the projects on which she was the lead engineer.  Further aggravating Plaintiff's budgeting issues, according to Defendant, was Plaintiff's choice to use senior level engineers, who billed at a higher rate, over junior engineers, when the tasks assigned to senior engineers could have been accomplished by junior engineers.

14

Plaintiff makes one argument in support of her qualification.  She cites to Myres'
deposition, in which he states that Krupnick never "fell below the company's expectations based
on [the company] metrics."  (*Myres Dep.* at 83, Doc. 29-9).  Myres also concedes that Plaintiff
never received discipline or corrective action.  *Id.*  Plaintiff claims that Myres' deposition
satisfies the qualification prong of the *prima facie* case.

Plaintiff has failed to meet her burden as to this element.  She relies on an outdated
definition of what is required to meet this element, stating that Plaintiff need only demonstrate
that she possesses the basic skills necessary to perform her job.  The Sixth Circuit, however, set
forth exactly what is required for a plaintiff to satisfy the qualification prong of the *prima facie*
test in *Wexler*.  317 F.3d at 575-76.  In determining whether Plaintiff has satisfied the
qualification prong at the *prima facie* stage, the Court must focus on Plaintiff's objective
qualifications.  *Hale*, 503 F. App'x at 333 (citing *Wexler*, 317 F.3d at 574-76).  Plaintiff's burden
"can therefore be met by presenting credible evidence that [her] qualifications are at least
equivalent to the minimum objective criteria required for employment in the relevant field."
*Wexler*, 317 F.3d at 575-76.  While specific qualifications vary based on the job, "the inquiry
should focus on criteria such as the plaintiff's education, experience in the relevant industry, and
demonstrated possession of the required general skills."  *Id.*

Here, Plaintiff neglected to set forth any information supporting her job qualifications.
She has failed to show any such evidence that points to her education, experience, and
possession of the required general skills in support of her *prima facie* case.  Though she very
well may possess the objective skills required to meet the qualification element, this Court
cannot simply make an inference as to their existence.  Furthermore, Plaintiff does not raise an
issue of material fact.  Plaintiff, therefore, fails to establish a *prima facie* case.

2.  <u>Whether Plaintiff Was Replaced With a Younger Individual</u>

Even if Plaintiff had raised an issue of material fact as to her qualifications, she would be unable to establish a *prima facie* case under the fourth element.  As stated *supra*, Section IV.B., the fourth element under the *McDonnell Douglas* framework in an age discrimination case is whether Plaintiff was replaced by a younger individual.  Here, Defendant argues that the termination was necessitated by a reduction in force ("RIF").  In cases where there has been a reduction in force, however, the pleading standard is slightly heightened, and the fourth element is altered:

> [i]nstead of establishing that he was replaced by a substantially younger worker, the plaintiff who is discharged as part of a RIF must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons."

*Schram v. Schwan's Sales Enterprises, Inc.*, 124 F. App'x 380, 383 (6th Cir. 2005) (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).  An action is considered a RIF case "when business considerations cause an employer to eliminate one or more positions within the company."  *Barnes*, 896 F.2d at 1465.  Here, Defendant has demonstrated that, based on a reduction in available hours, it had to eliminate certain positions, and did so with two other employees.[3]  Plaintiff unsuccessfully tries to refute that evidence by misquoting deposition testimony.  This Court, therefore, will analyze the fourth prong of the *McDonnell Douglas* test as a RIF.

---

[3] Though Myres was not terminated, he left ARCADIS in September 2011, and his retirement was factored into the termination decision and the assignment of hours.

Defendant argues that Plaintiff fails on this element because she cannot proffer any evidence that demonstrates that Defendant singled her out for termination based on impermissible reasons.  Much like the arguments raised under the qualification prong, Defendant reiterates Plaintiff's issues with work performance, conflicts with project managers, low performance review ratings, and Plaintiff's costly use of high-level engineers in place of low-level engineers.  Additionally, Defendant states that Plaintiff did not have an engineer's license in any state, unlike her level nine colleagues, Harris and Steed.  Though Defendant admits it is not a determinative factor, without such a license, Plaintiff was unable to stamp drawings. Furthermore, Defendant claims that an engineers' license was going to be required of level nine engineers in the future, which is why Plaintiff's lack of one was considered in the termination decision.

Plaintiff argues that Myres' comments constitute discriminatory remarks, thereby showing that Defendant's choice to terminate Plaintiff was based on her age.  Plaintiff also cites to her coworkers' testimony about project budgets, alleging that she was not the only person in the group who had difficulties staying within her project budgets.  Plaintiff claims that her colleague, Harris, had received complaints about his budgeting and had been removed from a particular project, and that he demonstrated negative personality traits that Myres had noticed. According to Plaintiff, because the issues with Harris did not result in his termination, it is a clear indication that Krupnick was unfairly singled out based on her age.

In *Williams v. General Electric Company*, this Court discussed the heightened pleading standard applied in RIF cases, stating that Plaintiff must present probative evidence that would allow the factfinder to believe that the employer intentionally discriminated against Plaintiff based on her age.  269 F. Supp. 2d 958, 967 (S.D. Ohio 2003).  *Williams* considered an employee

17

who had, after a long tenure in one position with General Electric ("GE"), been demoted and eventually fired from his lower position.  In discussing evidence Plaintiff could use to show evidence of discrimination in a RIF case, the Court suggested that Plaintiff present evidence that he was more qualified than younger workers whom GE did not terminate.

Here, Plaintiff has failed to raise an issue of material fact under this fourth element, as she has not presented enough evidence to demonstrate that employer singled her out for impermissible reasons.  Defendant cites various reasons for choosing Plaintiff for termination, each of which is grounded in permissible reasoning.  Though Plaintiff alleges that the same conversations she presented as direct evidence constitute probative evidence to show that Defendant acted in a discriminatory manner, she has not adequately demonstrated that she was unfairly singled out.  Therefore, Plaintiff has failed to establish a *prima facie* case of age discrimination.

### C. Defendant's Reason for Termination

In the interest of being thorough, the Court will address the final two parts of the *McDonnell Douglas* burden shifting test, as though Plaintiff had established her *prima facie* case. If Plaintiff is able to prove her *prima facie* case, the burden then shifts to Defendant to "articulate some legitimate, nondiscriminatory reason for its actions." *Skelton*, 249 F. App'x at 459 (internal citations omitted).  Here, Defendant has stated that there was a drastic decrease in electric engineering work during 2011, which resulted in a reduction in workforce.  Defendant, after eliminating two other workers, determined that the other employee to be eliminated would have to be one of the three level nine engineers.  Defendants considered a number of factors, and,

18

using an objective evaluation standard, ultimately found that Krupnick had the lowest overall performance when compared to Harris and Steed.

Plaintiff concedes, and this Court agrees, that Defendant has articulated a legitimate, nondiscriminatory reason for Krupnick's termination.

### D.  Pretext

Once Defendant demonstrates a legitimate, nondiscriminatory reason, the burden then shifts back to Plaintiff to show that Defendant's reasons were pretextual.  Plaintiff reiterates her arguments for the fourth prong of the *prima facie* case, citing her conversations with Myres, her coworkers' budgeting issues, and Harris's negative traits as proof that Defendant singled her out for her age.  In addition, Plaintiff claims that ARCADIS was a discriminatory atmosphere, citing to two coworkers' testimony in support.  Plaintiff argues that Myres' reasons for selecting Krupnick for termination had no basis in fact.  Plaintiff, without citing to any testimony, claims that Myres, Barchok, and Herriott did not present consistent testimony when asked about the reasons behind selecting Krupnick for termination.  Finally, Plaintiff points to the termination of a co-worker, Mark Meinhart, who specialized in computer-aided design and occasionally assisted Krupnick's group on projects.  At the time of his termination, Meinhart was 59 years old, which Plaintiff argues bolsters her claim that she was laid off based on her age.

To show that Defendant's proffered reasons for discharge were pretextual, a plaintiff may show that employer's proffered reasons: "1) [had] no basis in fact; 2) did not actually motivate the employer's challenged conduct; or 3) [were] insufficient to motivate the employer's challenged conduct." *Skelton*, 249 F. App'x at 460 (citing *Wexler*, 317 F.3d at 574).  Here, though Plaintiff presents arguments to suggest that there may have been other reasons behind

Defendant's decision, she fails to show that those reasons were not based in fact, did not actually motivate Defendant's termination decision, or were insufficient to motivate Defendant's decision.  Plaintiff's proffered reasons do not overcome Defendant's grounds for selecting Krupnick for termination.  In failing to present any issues of material fact as to this final step in the *McDonnell Douglas* test, Plaintiff has not shown that Defendant's legitimate, nondiscriminatory reasons were merely a pretext.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED**.  This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

  **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: March 13, 2014**